CHAD A. READLER
  *Acting Assistant Attorney General*
PHILLIP A. TALBERT
  *United States Attorney*
ANTHONY J. COPPOLINO
  *Deputy Director, Federal Programs Branch*
EMILY S. NEWTON
  *Trial Attorney*
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
emily.s.newton@usdoj.gov
tel.: (202) 305-8356
fax: (202) 616-8470

*Counsel for the United States of America*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAURYVONG SAVANG, *et al.*, | |
| *Plaintiffs*, | **Case No. 2:16-CV-02037-VC** |
| *v.* | **SUGGESTION OF IMMUNITY AND STATEMENT OF INTEREST OF THE UNITED STATES OF AMERICA** |
| LAO PEOPLE'S DEMOCRATIC REPUBLIC, *et al.*, | |
| *Defendants*. | |

## INTRODUCTION

Plaintiffs, on behalf of themselves and a putative class of similarly situated claimants, seek relief in this action from, among others, the Lao People's Democratic Republic (Laos); its sitting president, Bounnhang Vorachith; and its sitting prime minister, Thongloun Sisoulith. *See* Complaint, ECF No. 2. On June 22, 2017, the

Court issued an order directing Plaintiffs to file a supplemental brief addressing, *inter alia*: (1) "[w]hether any of the individual defendants are entitled to head-of-state immunity, or any other form of immunity"; (2) "[w]hether service was proper as to all defendants"; and (3) "[w]hether the Court has jurisdiction over [Laos] assuming service was effected properly." Order Granting Leave to Amend and Requesting Supplemental Briefing ("Order") at 1-2, ECF No. 24. Plaintiffs filed their supplemental brief on July 5, 2017. Plaintiffs' Brief re Court's Legal Issues ("Pls.' Supp. Br."), ECF No. 25.

Pursuant to 28 U.S.C. § 517,[1] the United States respectfully submits this Suggestion of Immunity and Statement of Interest addressing three issues presented by this case and highlighted in the Court's June 22 Order. First, the U.S. Department of State has determined that President Bounnhang and Prime Minister Thongloun are immune from suit. Because the Executive Branch retains the authority to recognize the immunity of foreign heads of state and heads of government, the United States respectfully submits that this action cannot proceed against them. Second, the record shows that Plaintiffs' attempt to serve Laos was ineffective under the terms of the Foreign Sovereign Immunities Act (FSIA). 28 U.S.C. §§ 1330, 1602–11. The United States has a strong interest in ensuring that foreign states are haled before U.S. courts only when properly served with process.[2] Third, even if Plaintiffs

---

[1] Under this statute, "any officer of the Department of Justice[] may be sent by the Attorney General to any State or district in the United States to attend to the interests of the United States in a suit pending in a court of the United States."

[2] At this time, the United States takes no position on (1) the possible immunity of the individual defendants other than President Bounnhang and Prime Minister

had properly effected service, the FSIA provides the sole basis for securing jurisdiction over foreign states in U.S. courts, and Plaintiffs have not properly identified an FSIA exception to immunity that would provide this Court with jurisdiction over Laos.[3]

The Lao Ministry of Foreign Affairs has formally requested that the United States recognize the immunity of President Bounnhang and Prime Minister Thongloun. *See* Diplomatic Note from the Min. of Foreign Affairs of the Lao People's Dem. Rep. to the U.S. Dep't of State (April 28, 2017) (attached as Exhibit A). In light of the relevant principles of customary international law, and based on its consideration of the United States' foreign policy and foreign relations interests, the Department of State has determined that it "recognizes and allows the immunity of

---

Thongloun; (2) the validity of Plaintiffs' service on defendants other than Laos; (3) whether Plaintiffs have shown minimum contacts sufficient for personal jurisdiction over the individual defendants; or (4) the merits of Plaintiffs' claims. In a case involving a claim of immunity, a court need not address the immunity question until it has first reached determinations on other threshold issues, including whether a foreign official defendant has been properly served and whether the court has personal jurisdiction. *See Sinochem Intern. Co. v. Malaysia Intern. Shipping Corp.*, 549 U.S. 422, 425 (2007).

[3]    The United States has also filed a suggestion of immunity and statement of interest in a similar case in this district, *Hmong I v. Lao PDR*, Civ. No. 15-2439, in which it suggested immunity on behalf of Laos's then-President and -Prime Minister and explained that the plaintiff had failed to effectuate service on Laos. ECF No. 23. On May 17, 2016, the magistrate judge issued an order and amended findings and recommendations, concluding that (1) the court lacks jurisdiction over the suit under *Kiobel v. Royal Dutch Petroleum Co.*, 133 S. Ct. 1659 (2013); (2) the plaintiff had not identified an FSIA exception to immunity in the case of Laos; and (3) the then-sitting President and Prime Minister of Laos were immune from suit. ECF No. 34. On June 13, 2016, the district court adopted the magistrate judge's findings and recommendations in full and ordered the plaintiff to show cause why the case should not be dismissed for lack of federal jurisdiction. ECF No. 40. The district court has not yet ruled on plaintiff's response to the order to show cause.

President Bounnhang as a sitting head of state and Prime Minister Thongloun as a sitting head of government from the jurisdiction of the United States District Court in this suit." Letter from Richard C. Visek, Acting Legal Adviser, U.S. Dep't of State, to Chad A. Readler, Acting Assistant Att'y Gen., U.S. Dep't of Justice (May 26, 2017) (hereinafter "Dep't of State Letter") (attached as Exhibit B).

The United States also has an important interest in ensuring that litigation against foreign states in U.S. courts proceeds in accordance with the comprehensive rules set out in the FSIA. Plaintiffs' attempt to serve the Lao state via the Presidential Palace in Vientiane, Laos did not satisfy the FSIA's requirements. Plaintiffs purported to serve Laos on September 22, 2016, by sending copies of the summons, Complaint, and civil cover sheet to the Presidential Palace, addressed to the former President of Laos, via Federal Express International Delivery. *See* ECF No. 9; *see also* Pls.' Supp. Br. at 6. Such service does comport with any of the methods of service set out in the FSIA, 28 U.S.C. § 1608(a). Nor have Plaintiffs even identified which of the FSIA's statutory exceptions to immunity they believe apply to provide the court with jurisdiction over the claims against Laos. In light of these deficiencies, it would be inappropriate for the Court to enter a default judgment against Laos, as Plaintiffs have requested, *see* Plaintiffs' Motion for Default Judgment, ECF No. 22.

**SUGGESTION OF IMMUNITY FOR PRESIDENT
BOUNNHANG AND PRIME MINISTER THONGLOUN**

I.    **President Bounnhang and Prime Minister Thongloun Are Immune
From Suit.**

The United States respectfully informs the Court of its interest in the pending

claims against President Bounnhang, Laos's sitting head of state, and Prime Minister

Thongloun, its sitting head of government, and hereby informs the Court that both

officials are immune from suit.  The Constitution assigns to the U.S. President alone

the responsibility to represent the Nation in its foreign relations.  As an incident of

that power, the Executive Branch has the sole authority to determine the immunity

from suit of incumbent heads of state and heads of government.  The interest of the

United States in this matter arises from a determination by the Executive Branch, in

consideration of the relevant principles of customary international law, and in the

implementation of its foreign policy and in the conduct of its international relations,

that President Bounnhang and Prime Minister Thongloun are immune from this suit.

As discussed more fully below, this determination is controlling and is not subject to

judicial review.  Indeed, the United States is aware of no case in which a court has

ever subjected a sitting head of state or head of government to suit once the Executive

Branch has determined that he or she is immune.

Here, the Office of the Legal Adviser of the U.S. Department of State has

informed the U.S. Department of Justice that the government of Laos has formally

requested that the United States recognize President Bounnhang's and Prime

Minister Thongloun's immunity from this lawsuit.  *See* Dep't of State Letter, *supra*.

1    The Office of the Legal Adviser has further informed the Department of Justice that

2    the "Department of State recognizes and allows the immunity of President

3    Bounnhang as a sitting head of state and Prime Minister Thongloun as a sitting head

4    of government from the jurisdiction of the United States District Court in this suit."

5    *Id.*

6          The immunity of foreign officials from suit in U.S. courts is now determined

7    under a different legal regime from the immunity of foreign states.  For many years,

8    both types of immunity were determined exclusively by the Executive Branch, and

9    courts deferred completely to the Executive's foreign sovereign immunity

10   determinations.  *See, e.g.*, *Republic of Mexico v. Hoffman*, 324 U.S. 30, 35 (1945) ("It

11   is . . . not for the courts to deny an immunity which our government has seen fit to

12   allow, or to allow immunity on new grounds which the government has not seen fit

13   to recognize.").  But in 1976, Congress codified the standards governing suits against

14   foreign states in the FSIA, transferring to the Judiciary the responsibility for

15   determining whether such a state is subject to suit.  *See* 28 U.S.C. § 1602 ("Claims of

16   foreign states to immunity should henceforth be decided by courts of the United

17   States and of the States in conformity with the principles set forth in the [FSIA].").

18   As the Supreme Court has explained, however, Congress has not similarly codified

19   standards governing the immunity of foreign officials from suits in our courts.

20   *Samantar v. Yousuf*, 560 U.S. 305, 325 (2010) ("Although Congress clearly intended

21   to supersede the common-law regime for claims against foreign states, we find

22   nothing in the statute's origin or aims to indicate that Congress similarly wanted to

23

codify the law of foreign official immunity.").  Instead, when it codified the principles governing the immunity of foreign states, Congress left in place the practice of judicial deference to Executive Branch immunity determinations with respect to foreign officials.  *See id.* at 323 ("We have been given no reason to believe that Congress saw as a problem, or wanted to eliminate, the State Department's role in determinations regarding individual official immunity.").  Thus, the Executive Branch retains its historic authority to determine a foreign official's immunity from suit, including the immunity of foreign heads of state and heads of government.  *See id.* at 311–12 & n.6 (noting the Executive Branch's historical role in determining head of state immunity).

This doctrine of head of state immunity is well-established in customary international law.  *See, e.g.*, *Lafontant v. Aristide*, 844 F. Supp. 128, 132–33 (E.D.N.Y. 1994); Ernest Mason Satow, *Satow's Guide to Diplomatic Practice* 9 (Lord Gore-Booth ed., 5th ed. 1979); Restatement (Second) of the Foreign Relations Law of the United States §§ 65–66 (1965).  It protects a foreign leader's ability to function effectively and ensures respect for the dignity of his or her office.  *See, e.g.*, *Ex parte Republic of Peru*, 318 U.S. 578, 588–89 (1943).  Despite the doctrine's common label — "head of state immunity" — it extends to incumbent foreign heads of government as well.  *See*, *e.g., Schooner Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116, 137–38 (1812); *see also Arrest Warrant of 11 April 2000* (*Dem. Rep. Congo v. Belg.*), 2002 I.C.J. 3, 29–30 (Feb. 14); Restatement (Second), *supra*, §§ 65–66.

In the United States, head of state immunity determinations are made by the Department of State, incident to the Executive Branch's authority in the field of

foreign affairs.  *See, e.g.*, *Habyarimana v. Kagame*, 696 F.3d 1029, 1032–33 (10th Cir. 2012).  The Supreme Court has held that the courts of the United States are bound by suggestions of immunity submitted on the Department's behalf.  *See Hoffman*, 324 U.S. at 35–36; *Peru*, 318 U.S. at 588–89.  In *Peru*, for example, the Supreme Court declared that such a determination "must be accepted by the courts as a conclusive determination by the political arm of the Government."  318 U.S. at 589.  In other words, once a suggestion of immunity is filed, "it is the court's duty to surrender the [matter] and remit the [plaintiff] to the relief obtainable through diplomatic negotiations."  *Id.* at 588.

For this reason, courts have routinely deferred to the Executive Branch's immunity determinations concerning sitting heads of state and heads of government without further review.  *See, e.g.*, *Habyarimana*, 696 F.3d at 1031–33 ("We must accept the United States' suggestion that a foreign head of state is immune from suit . . . as a conclusive determination . . . that the continued [exercise of jurisdiction] interferes with the proper conduct of our foreign relations." (quoting *Peru*, 324 U.S. at 589) (third alteration in original)); *Wei Ye v. Jiang Zemin*, 383 F.3d 620, 625 (7th Cir. 2004) ("The obligation of the Judicial Branch is clear — a determination by the Executive Branch that a foreign head of state is immune from suit is conclusive and a court must accept such a determination without reference to the underlying claims of a plaintiff."); *Doe v. State of Israel*, 400 F. Supp. 2d 86, 110 (D.D.C. 2005) (dismissing claims against the prime minister of Israel because "[w]hen the Executive Branch concludes that a recognized leader of a foreign sovereign should be immune

from the jurisdiction of American courts, that conclusion is determinative."); *Saltany v. Reagan*, 702 F. Supp. 319, 320 (D.D.C. 1988) (holding that the determination of the U.K. prime minister's immunity from suit was conclusive and dismissing the claims against her), *aff'd in part and rev'd in part on other grounds*, 886 F.2d 438 (D.C. Cir. 1989).

When the Executive Branch determines that a sitting head of state or head of government is immune from suit, judicial deference to that determination is predicated on compelling considerations arising out of the Executive's constitutional authority to conduct foreign affairs. *See Wei Yi*, 383 F.3d at 626. Judicial deference to the Executive Branch in these matters, as the Seventh Circuit has noted, is "motivated by the caution we believe appropriate of the Judicial Branch when the conduct of foreign affairs is involved." *Id.*; *see also Spacil v. Crowe*, 489 F.2d 614, 619 (5th Cir. 1974) ("Separation-of-powers principles impel a reluctance in the judiciary to interfere with or embarrass the executive in its constitutional role as the nation's primary organ of international policy."). As other courts have explained, the Executive Branch possesses substantial institutional resources and extensive experience with which to conduct the country's foreign affairs. *See, e.g.*, *Spacil*, 489 F.2d at 619; *cf. United States v. Truong Dinh Hung*, 629 F.2d 908, 913–14 (4th Cir. 1980). In other words, "in the chess game that is diplomacy only the executive has a view of the entire board and an understanding of the relationship between isolated moves." *Spacil*, 489 F.2d at 619. For this reason, and as noted above, the United States is aware of no case in which a court has subjected a sitting head of state or

head of government to suit once the Executive Branch has recognized his or her immunity.[4]

Under the customary international law principles recognized and accepted by the Executive Branch, head of state immunity attaches to a head of state's or head of government's status as the current holder of his or her office.  Because the Department of State has determined that President Bounnhang and Prime Minister

---

[4]    Instead, courts have dismissed numerous cases against sitting heads of state and heads of government. *See, e.g.*, Order at 3, *Am. Justice Ctr. v. Modi*, No. 14-CV-7780 (S.D.N.Y. Jan. 14, 2015) (dismissing a complaint against India's prime minister because, "in light of the determination by the Executive Branch that [he was] entitled to immunity as the sitting head of a foreign government, he [was] immune from the jurisdiction of [the] Court"); *Tawfik v. al-Sabah*, No. 11-CV-6455, 2012 WL 3542209, at *3–4 (S.D.N.Y. Aug. 16, 2012) (holding that "the Executive Branch's determination over the scope of the [sitting head of state of Kuwait]'s immunity [was] controlling"); *Manoharan v. Rajapaksa*, 845 F. Supp. 2d 260, 262 (D.D.C. 2012) (dismissing claims against the president of Sri Lanka because "the Court [was] bound by the State Department's Suggestion of Immunity"), *aff'd*, 711 F.3d 178 (D.C. Cir. 2013); *Howland v. Resteiner*, No. 07-CV-2332, 2007 WL 4299176, at *2 & n.2 (E.D.N.Y. Dec. 5, 2007) (dismissing a complaint against the prime minister of Grenada and recognizing "no doubt that he [was] entitled to immunity" after the Executive Branch had filed a suggestion of immunity); *Doe v. Roman Catholic Diocese of Galveston-Houston*, 408 F. Supp. 2d 272, 278 (S.D. Tex. 2005) (holding that the Executive's immunity determination "is not subject to additional review by a federal court"); *Leutwyler v. Queen Rania Al-Abdullah*, 184 F. Supp. 2d 277, 280 (S.D.N.Y. 2001) (noting that the Executive Branch's head of state immunity determination "is entitled to conclusive deference from the courts"); *Tachiona v. Mugabe*, 169 F. Supp. 2d 259, 297 (S.D.N.Y. 2001) (dismissing a suit against the president and foreign minister of Zimbabwe based on a suggestion of immunity filed by the Executive Branch), *aff'd*, 386 F.3d 205 (2d Cir. 2004); *First Am. Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1119 (D.D.C. 1996) (dismissing a suit against the president of the United Arab Emirates based on a suggestion of immunity because "courts of the United States are bound to accept such head of state determinations as conclusive"); *Alicog v. Kingdom of Saudi Arabia*, 860 F. Supp. 379, 382 (S.D. Tex. 1994) (concluding that the recognition by the Executive Branch of the Saudi king's immunity required dismissal of the complaint against him), *aff'd*, 79 F.3d 1145 (5th Cir. 1996); *Lafontant*, 844 F. Supp. at 132 (recognizing that the determination by the Executive Branch of the Haitian president's immunity was binding on the court and required dismissal of the case).

---

*Suggestion of Immunity and Statement of Interest of the United States of America*    10

Thongloun enjoy immunity from the jurisdiction of U.S. courts in light of their current status as Laos's head of state and head of government, respectively, the claims against them should be dismissed.[5]

That Plaintiffs allege that the President and Prime Minister committed "war crimes," *see* Pls.' Supp. Br. at 9-13, does not alter this conclusion.  Despite the Court's specific direction to address "[w]hether any of the individual defendants are entitled to head-of-state immunity," *see* Order at 2, Plaintiffs do not address head of state immunity at all in their supplemental brief.  *See* Pls.' Supp. Br. at 9-13.  Instead, Plaintiffs argue that "[w]ar crimes do not receive protection under *functional* immunities" and cite to cases purportedly supporting their view that the President and Prime Minister are not entitled to "*functional* immunity" because Plaintiffs have alleged that they committed "war crimes."  *Id.* at 13 (emphasis added).   Here, however, the Executive has determined that the President and Prime Minister of Laos enjoy immunity based on their *status* as the sitting head of state and head of government, respectively.  In cases where the Executive does so, courts consistently defer to the State Department's determination, regardless of the nature of plaintiffs' allegations, including allegations of war crimes or other human rights abuses.  *See, e.g.*, *Habyarimana*, 696 F.3d at 1032 (deferring to suggestion of immunity for head of state in case involving allegations of political assassination and torture); *Wei Ye*, 383

---

[5]  Once the Executive Branch submits a suggestion of immunity, "the district court surrender[s] its jurisdiction."  *Samantar*, 560 U.S. at 311; *see also Peru*, 318 U.S. at 588.  As such, even if President Bounnhang or Prime Minister Thongloun were to leave office before this Court dismisses the claims against them, they would remain immune from this lawsuit.

1    F.3d at 627 (7th Cir. 2004) (court is bound by the Executive's suggestion of immunity,

2    "that a foreign leader should be immune from suit even when the leader is accused of

3    acts that violate *jus cogens* norms"); *Doe I v. State of Israel*, 400 F. Supp. 2d 86, 110

4    (D.D.C. 2005) (in case alleging *jus cogens* violations, "[w]hen the Executive Branch

5    concludes that a recognized leader of a foreign sovereign should be immune from the

6    jurisdiction of American courts, that conclusion is determinative.").[6]

7            Plaintiffs' argument "ignores the distinction between a Suggestion of

8    Immunity, which is made by the United States, and a claim of immunity, which is

9    made by a defendant." *Hmong I v. Lao People's Democratic Republic*, No. 2:15-CV-

10   2349 TLN AC, 2016 WL 2901562, at *10 (E.D. Cal. May 17, 2016), *report and*

11   *recommendation adopted sub nom. Hmong v. Lao People's Democratic Republic*, No.

12   2:15-CV-02349 TLN AC, 2016 WL 3254066 (E.D. Cal. June 13, 2016).   "The

13   distinction is critical, because . . . claims of immunity [a]re examined by . . . court[s]

14   on the merits of the immunity claim, whereas . . . a Suggestion of Immunity is entitled

15   to deference without any examination of the merits of the immunity claim."  *Id.* at

16   *10.   Thus, "even if plaintiff[s] [were] correct that the courts may reject a 'claim of

17   immunity' *made by the defendant* when war crimes are involved," that argument has

18   no application "where the United States has filed a Suggestion of Immunity on behalf

19

20   [6] In any event, the courts defer as well to Executive Branch suggestions of immunity
     involving foreign officials or former foreign officials, who enjoy functional immunity,
21   including in cases where the plaintiffs allege war crimes and violations of *jus cogens*
     norms. *See, e.g., Dogan v. Barak*, 2016 WL 6024416, at *10 (C.D. Cal. Oct. 13, 2016)
22   ("The resolution of this dispute belongs with the Executive Branch, not the Judicial
     Branch."), *judgment entered sub nom. Doğan v. Barak*, 2016 WL 5947236, *appeal*
23   *pending*, No. 16-57604 (9th Cir.).

*Suggestion of Immunity and Statement of Interest of the United States of America*   12

1    of a sitting head of state or head of government." *Id.* at *10 n.16 (emphasis in

2    original).  Plaintiffs' allegations thus have no bearing on the immunity determination

3    here, which is controlled by the Executive Branch's determination that the President

4    and Prime Minister of Laos are immune from suit.

### STATEMENT OF INTEREST REGARDING PLAINTIFFS' CLAIMS AGAINST LAOS

5    The United States also has an important interest in ensuring that litigation

6    against foreign states in U.S. courts proceeds in accordance with the rules set out in

7    the FSIA and that foreign states do not have to respond or appear in U.S. courts

8    without having received proper service of process.  These interests are based, in part,

9    on considerations of reciprocity.  The Department of State regularly objects when

10   foreign courts or litigants attempt to serve the United States in a manner that we

11   view as inconsistent with international law.  Ensuring that service upon foreign

12   states and jurisdiction over foreign states in U.S. courts complies with domestic and

13   international law encourages other nations to accord the United States the same

14   consideration in their judicial systems.

15   Here, the record shows that Plaintiffs' attempt to serve the Lao state was

16   improper because it did not meet the requirements for service set forth in the FSIA.

17   In addition, Plaintiffs have failed to identify an FSIA exception to immunity that

18   would provide this Court jurisdiction over Laos.

1

2

## I. The FSIA Does Not Allow for Plaintiffs' Purported Method of Service Upon Laos.

The FSIA establishes "the sole basis for obtaining jurisdiction over a foreign state in our courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). Personal jurisdiction exists under the statute where there is both subject matter jurisdiction and proper service. *See* 28 U.S.C. § 1330(a)–(b). Section 1608(a) of the act contains the four exclusive means of service of process on a foreign state, and specifies the order in which they must be attempted. *See id.* § 1608(a); *accord Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1130 (9th Cir. 2010). These methods are (1) service according to a "special arrangement between the plaintiff and the foreign state," (2) service under "an applicable international convention on service," (3) service by mail to the foreign minister of the foreign state, or (4) service by transmission of process to the State Department, which will forward necessary papers "through diplomatic channels to the foreign state." 28 U.S.C. § 1608(a). Consistent with the United States' position, most courts have required "strict compliance" with § 1608(a). *See, e.g.*, *Magness v. Russian Federation*, 247 F.3d 609, 615 (5th Cir. 2010); *Transaero, Inc. v. La Fuerza Aérea Boliviana*, 30 F.3d 148, 154 (D.C. Cir. 1994). The Ninth Circuit, by contrast, has held that "substantial compliance" will do. *Peterson*, 627 F.3d at 1129.

Even under a more liberal substantial compliance standard, however, Plaintiffs' attempt to serve Laos was ineffective to satisfy any of § 1608(a)'s four methods of service. Subsection (a)(1) is inapposite, because there is no suggestion in the record of a "special arrangement" between Plaintiffs and Laos. Subsection (a)(2)

is similarly inapplicable, because there are no international treaties on service of process in force between the United States and Laos.  While Plaintiffs' supplemental brief discusses service under the Hague Service Convention,[7] *see* Pls.' Supp. Br. at 6-8, Laos is not a party to that Convention, so service under (a)(2) is not an option available to Plaintiffs.

Plaintiffs' purported service also failed to "substantially comply" with subsection (a)(3).  To satisfy that provision, a plaintiff must:

> send[] a copy of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned.

28 U.S.C. § 1609(a)(3).  Here, the summons and complaint were not sent via the clerk of the court.  They did not include a "notice of suit" — a particular legal document whose components are specified in 22 C.F.R. § 93.2.  Plaintiffs also concede that the summons and complaints were not translated into Lao.  *See* Pls.' Supp. Br. 6.  And they were not addressed to the Lao minister of foreign affairs.  *See* Affidavit of Process Server at 2, ECF No. 9.[8]

---

[7] The Hague Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, *Convention Done at the Hague Nov. 15, 1965;*, T.I.A.S. No. 6638 (Feb. 10, 1969).

[8] The failure to translate the documents alone would be sufficient to take Plaintiffs' purported service beyond the realm of "substantial compliance": the Ninth Circuit has held that "[f]ailure to deliver a complaint in the correct language is such a fundamental defect that it fails . . . [the] 'substantial compliance' test." *Straub v. A P Green, Inc.*, 38 F.3d 448, 453 (9th Cir. 1994).  Indeed, relevant case law confirms that Plaintiffs did not even achieve "minimal compliance" with the statute. *Berdakin v. Consulado de la República de El Salvador*, 912 F. Supp. 458, 467 (C.D. Cal. 1995).  In *Berdakin*, the court held that the plaintiff fell far short of substantial compliance

1         Finally, Plaintiffs have made no attempt to effect service under subsection

2 (a)(4) by requesting the clerk of the court to dispatch the requisite documents to the

3 Secretary of State for transmission through diplomatic channels.

4         Accordingly, Plaintiffs' attempt to serve Laos by sending via Federal Express

5 copies of the summons, Complaint, and civil cover sheet to the Presidential Palace,

6 addressed to the former President of Laos, does not satisfy § 1608(a)'s requirements.

7 The Court therefore lacks personal jurisdiction over Laos.

8 ## II. Plaintiffs Have Failed to Identify an FSIA Exception to Immunity Providing this Court with Jurisdiction Over Laos.

9

10         Even if Plaintiffs had properly effected service, they fail to identify an FSIA

11 exception to immunity that would provide this Court with jurisdiction over Laos.

12 Under the FSIA, foreign states are immune from the jurisdiction of U.S. courts unless

13 a suit falls within one of the exceptions to immunity set forth in the Act. 28 U.S.C. §

14 1604; *see also* 28. U.S.C. § 1330. Nowhere in Plaintiffs' Complaint or subsequent

15 filings do they identify which statutory exception to immunity applies in this case.

16 Plaintiffs cite only 28 U.S.C. § 1331 (federal question jurisdiction) and the Alien Tort

17 Claims Act (ATCA), 28 U.S.C. § 1350, as the jurisdictional bases for their suit, *see*

18 Complaint ¶ 1, and their sole cause of action relies on the ATCA. *See id.* ¶ 119. Their

19 supplemental brief baldly states that "sovereign immunity[y] do[es] not apply to war

20 crimes," Pls.' Supp. Br. 9, 13 (same), but cites no authority for that proposition and

21

22 where process was not dispatched by the clerk of the court, was not translated, was not addressed to the foreign minister, and was not sent with a return receipt requested. *Id.* at 467. Plaintiffs' purported service here was equally deficient.

23

*Suggestion of Immunity and Statement of Interest of the United States of America*    16

1  contains no reference to or discussion of the FSIA's exceptions to immunity.  Entry of

2  a default judgment against Laos would be unwarranted for this additional reason.

3                                    **CONCLUSION**

4          For the foregoing reasons, President Bounnhang and Prime Minister

5  Thongloun are immune from this suit, Plaintiffs' attempt to serve Laos did not

6  amount to proper service under the FSIA, and Plaintiffs have failed to identify an

7  FSIA exception to immunity providing this Court with jurisdiction over Laos.

8

9  July 13, 2017                        Respectfully submitted,

10                                      CHAD A. READLER
                                          *Acting Assistant Attorney General*

11                                      PHILLIP A. TALBERT
                                          *United States Attorney*

12

13                                      ANTHONY J. COPPOLINO
                                          *Deputy Director, Federal Programs Branch*

14                                       ___/s/_____
                                        EMILY S. NEWTON

15                                        Va. Bar No. 80745
                                          *Trial Attorney*

16                                        United States Department of Justice
                                          Civil Division, Federal Programs Branch

17                                        20 Massachusetts Avenue NW
                                          Washington, DC 20530

18                                        emily.s.newton@usdoj.gov
                                          tel.: (202) 305-8356

19                                        fax: (202) 616-8470

20                                      *Counsel for the United States of America*

21

22

23

1

2

**CERTIFICATE OF SERVICE**

3

4

I hereby certify that on July 13, 2017, I filed the foregoing statement of interest and all attachments through the Court's CM/ECF system, which will send notice of such filing to all counsel of record.

5

6

July 13, 2017                                    _____/s/_____
                                                  EMILY S. NEWTON

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

*Suggestion of Immunity and Statement of Interest of the United States of America*    18